Our first argument of the morning is docket number 22-1528, Sipples v. McDonough. Is it Sippers or Cyples? Cyples, Your Honor. Cyples. Thank you. Yes. Thank you. Okay. And Mr. DeHakis? Yes, Your Honor. Okay. You reserve three minutes. Yes? Yes, Your Honor. Okay. Please begin whenever you're ready. Good morning, and may it please the Court, Kennedy DeHakis for the appellant, Clinton Cyples. I want to thank the Court for this opportunity to present his appeal today. Before this Court is an appeal from the Veterans Court on an issue of clear and unmistakable error and what law applies when the Board reviews that error. The Veterans Court held, like Judge Toth did in Percivali, that because the legal issue was not settled at the time of the prior AOJ decision, it cannot be cued. But just as this Court found Judge Toth's ruling in Percivali wrong, it should also find his ruling in this case wrong. And we emphasize that Judge Toth essentially made the same ruling in both this case and in Percivali. Although cue cannot lie where there has been a change in law, this Court held that in Percivali that cue can be based on the plain meaning of the regulation, regardless of later changes in law or later decisions by the agency or a court. I guess the question is, what does it mean for there to be a legal-based cue based on just the language of the regulation alone? I guess it sounded like to me from your briefing that if you felt like if there is one correct interpretation, then any other interpretation would be cue. Is that kind of the way to capture your understanding? Yes, Your Honor. And so therefore, if we were to read the Burton Veterans Court opinion as announcing the correct interpretation, I think that's debatable. But let's say it did. Then you're saying that that just retroactively applies to the 2004 RO decision here. And because that decision in 2004 did not apply the Burton interpretation, the VA was, that was clear and unmistakable error. Mostly, Your Honor, I would not classify it as a retroactive application of the Burton ruling. There was no Burton ruling in 2004. That's correct, Your Honor. What we had in 2004 relative to this issue were two sources of law. One was the general counsel opinion 9-98, which I think we all agree compels the VA to consider, and we would go so far as to say separately rate, his limited motion. That's been well established since, as Percivali pointed out. I assume for the moment that the court concludes that the VA general counsel 1998 opinion is not so clear as to whether 4.59 applies to non-arthritis claims. I did not read or necessarily argue that 9-98 by itself compels 4.59 to apply to non-arthritic joints. I think that the issue is or was in 2004 unsettled. There was no official authoritative legal ruling either by the general counsel or by any court that compelled the VA to apply 4.59, but equally there was no legal rule that said they did not have to. And that's really what... that held that the regulation was not applicable to someone who didn't have arthritis. Would those be authoritative in your view? No, Your Honor, because they're non-precedential, and under the court's rules and just general jurisprudence, they don't apply outside of the specific holding in that case. And to the extent that they're wrong, a later formal interpretation that is binding, that is precedential, would control. And so even though the court may have gotten it wrong in non-precedential opinions, that interpretation does not reach back. And as Burton suggested... So they're contemporaneous, like opinions that were written maybe shortly before or shortly after 2004. Non-clarified. Non-precedential. Non-precedential, Your Honor, we think has no bearing on how to interpret the regulation. Even though in those situations the Veterans Court was interpreting the regulation. Your view is because it's non-precedential, you can't treat that as the law that existed at the time of the 2004 decision. That's correct, Your Honor. Could you, though, on the other hand, treat it as something that at least at a minimum shows that it's not clear and unmistakable that the Burton rule applied? No, Your Honor, because if it's contrary to what the regulation says, then it is clear and unmistakable error. And so we're bound by the words of the regulation. And 4.59, whether Burton officially unambiguously says that it applies to non-arthritic joints or not, which I think it does, or not, is what controls. And just because a prior non-precedential, non-binding decision got that wrong, that decision does not bind anybody at the VA. Well, I guess we're trying to understand what does it mean to be undebatable error. And my understanding of the Veterans Court opinion here is that it looked at the face of 4.59 and its language and felt like just on its face it's not so undebatably clear that it applies to non-arthritis claims. And it goes beyond arthritis claims. And what I'm trying to figure out is what is wrong with that analysis. We have to go back in time to 2004. So we pretend Burton doesn't exist. And just based on what an RO adjudicator had, and let's take it for granted for right now, that there was no settled meaning, there was no controlling meaning. And you're that RO adjudicator. Why do we necessarily say that no reasonable mind, no reasonable adjudicator at the VA at the time could have read 4.95, 4.59 to be just about arthritis? When the regulation, the first words out of the regulation is it's talking about arthritis. And therefore it looks arthritis-centric. Well, it is, Your Honor. And I mean, I would point out, too, that the title of the regulation is limited or painful motion. It doesn't have anything to do with arthritis. But that aside. Well, just right now, though, I mean, it's a different inquiry. Like what is correct and incorrect as a matter of law after exhausting all interpretive tools and then coming to an interpretation. In fact, this is something much more limited to try to figure out whether something was so undebatably clear that no reasonable mind without any guidance would have believed one thing over another. Right, Your Honor. And so my response to that is, in George, the Supreme Court, as pointed out from Percivali, and I'm reading here from Percivali, it's clear from the Supreme Court's decision in George that the correct Q inquiry is simply whether the original decision was a correct application of a binding regulation. That's the inquiry. Not whether the regulations ambiguous is irrelevant to what is its meaning. Once an authoritative source, whether it's a general counsel opinion by the VA or a precedential decision by one of the courts or, as in George, a regulation, which interpreted the statute, once that interpretation is issued, that's when it's binding. That's the interpretation. So I'm doing some misconduct going forward. Well, no, Your Honor, because in, again, going back to Glover, the Veterans Court for the very first time interpreted the regulation and said based on this interpretation, there was no Q. And this Court affirmed and endorsed that rule of law that we can interpret it today in an appeal addressing whether the Q was committed under the correct interpretation of that regulation. And so the inquiry is what does the regulation do? The trouble I'm having with this is that you seem to be thinking an erroneous interpretation is automatically a clear and erroneous, a clear and unmistakable error. And I don't think that's necessarily true here under the circumstances. I think the kinds of error we're looking for, even for a legal-based error, has to be clear and unmistakable. And so there's a higher threshold that you have to persuade the VA with when it comes to a legal-based error. That's true, Your Honor. And that's why I'm trying to understand what was so wrong about what the Veterans Court did here when they were searching through that regulation and thinking to themselves, well, it's not so undebatably clear in 2004. Even if in 2011 there was a definitive interpretation, back in 2004 when there was no settled meaning, why was it so extra very clear that this regulation could only be understood one way such that it was clear and unmistakable error to read it a second way? The error is not in how the AOJ interpreted the regulation. The error is or could have interpreted the regulation. The error is that the regulation requires the VA to rate, to apply 4.59 to all joints whether there's arthritis or not. We know that because that's what the ruling in Burton says. And I think that just an analysis of the language from the regulation compels that result. I have a hard time understanding why you're not asking for a retroactive application at Burton. Like now that we know it, it's so clear, the government changed its position. And now that we know it and it's so clear, it should be applied and the regulation should be read as if it always was read that way. Right? Not, no, Your Honor. I am not asking, Mr. Cyples is not asking for a retroactive application. What we're asking the court to do is to assess what did 4.59 say and what did it require in 2004 when there was no authoritative binding interpretation by any agency or court opinion. And so we can't ignore Burton's holding because it's reality. And so I think I struggled in arguing this for that specific reason because, again, in Grubber, the court contemporaneously interpreted the regulation. And I don't think that there's any reason to treat the two cases differently when an interpretation is done while reviewing for Q on a regulation that's never been interpreted. I hear what you're saying. Hypothetically, if this interpretation and Burton's was one that was so clear and maybe there was no contrary interpretations ever having been made by the government or by the Veterans Court as affirmed by the Federal Circuit, maybe then I could understand your point. But my problem is that in this case, it doesn't seem undebatable how it would have been interpreted in 2004 because of the existence of these other, albeit non-PRAC, opinions that interpreted it differently combined with the fact that even during Burton, the government changed its position. It wasn't until the government changed its position that the interpretation in Burton became clear. So why don't those things show that it is debatable what would have happened in 2004? Because, Your Honor, we're not looking at whether the interpretation is or is not debatable. We're looking at whether the error is undebatable. And to look at that, we have to know what the regulation requires, which requires the court to apply the plain meaning of the regulation. I'm not sure I understand the difference between saying the interpretation was wrong and that there was an error. I mean, that distinction leaves me. Under the cue, Your Honor, and under the case law, the analysis is if an error factor law was made that would have manifestly changed the outcome. Right. And here, if they applied the wrong interpretation of the regulation, and by applying the correct interpretation, he would have been entitled to additional ratings. Then he's established a clear and unmistakable error. What force do you attribute to Ferguson and Lipton-Fells, both of which have language in them that suggests that the regulation applies to arthritis exclusively? Your Honor, my response, as we said in our reply brief, is that those two cases only dealt with arthritis. They did not consider a non-arthritic joint. In particular, Lipton-Fells talks about Diagnostic Code 5003 and 4.59, and Ferguson was looking at Diagnostic Code 5002. But I think if I were a regional office employee looking at those cases, I think I would probably read that language as suggesting that the regulation is limited to arthritis, particularly when read in light of the language of the regulation, which in the first sentence talks about arthritis. That may be, Your Honor, but if it's contrary to what the regulation says, it's irrelevant. And as long as there's... That's the question. But the problem is that regulation is, it seems to me, ambiguous. It's language. You wouldn't dispute that, I take it. I would not dispute it, Your Honor. Right. So can an arguably erroneous interpretation at the time of an ambiguous statute be clear in unmistakable error? That's the question. Yes, Your Honor, and that's our position. And if we affirm what the Veterans Court did here, then that means that for every single ambiguous regulation, there can never be cue until somebody has looked at it, a court has looked at it, or the general counsel has looked at it and said, this is now what the regulation means. And I don't think that that's what Congress envisioned when they created a clear and unmistakable error to carve out an entire swath of laws that are ambiguous. VA regulations are filled with ambiguity. And it's hard to parse through all these, Kaiser notwithstanding, in finding the best interpretation that the courts are required to do. But... Mr. Warhawk, you've used up all your time, and we'll try to give you a little time. Thank you, Your Honor. All right, let's hear from the government. Thank you. Good morning, and may it please the Court. In George v. McDonough, the Supreme Court held that clear and unmistakable error must be based on the record and the law that existed at the time of the prior VA decision. This unambiguous holding does not distinguish between a first interpretation or a change in interpretation. It simply means that a legal development that postdates, that comes after, the initial decision that is under review cannot be a basis for Q. Here, that means that Mr. Siples cannot establish Q in a 2004 rating decision based on a legal development that happened seven years later, in 2011. And the Court should affirm as a result. Go ahead. Let me see if I understand the effect of Burton, given the way Burton came up. As I understand Burton, it was not a decision of the Veterans Court that the regulation was clearly applicable beyond arthritis. It was the Veterans Court, what the Veterans Court was saying, as I read it, the Secretary has come in and said this is the way we now read this regulation and we will defer to the Secretary's interpretation. What significance do you attach to the fact that that was not a Court decision saying this is the regulation properly read, but rather this is an issue that we will defer? And a second part of that question is, to the extent that you know, was the Secretary saying or was there anything in the record of Burton indicating that the Secretary's position was a new position from the Secretary or was this the Secretary saying this has been the proper reading of the regulation all along? So I'll start with the second question, Judge Bryson. This was a new position by the Secretary. The facts of Burton demonstrate that because initially before the Veterans Court, the Secretary took the position that Section 459 does not apply outside the arthritis context. And the Veterans Court, by a single judge, agreed. The single judge said that is a reasonable interpretation of 459. How do we know that position is attributable to the VA Secretary and not just the RO adjudicator? I mean, obviously it was the RO adjudicator who denied the claim under 4.59 based on an understanding that it doesn't apply to non-arthritis claims. And then in the middle of the stream of litigation, then the VA stepped in and adopted a different interpretation. But how do we know that the initial interpretation was the VA Secretary's interpretation and not just a line adjudicator? The question is in Burton itself. Yeah. I'm not sure we know that, but I do think that by the time it gets to the Veterans Court, the Secretary develops an agency position on the meaning of the regulation. I take it. Go ahead, please finish. So just to finish my answer to your question, Judge Bryson, so initially the Secretary took the position that 459 applies only to arthritis. The Veterans Court single judge adopted that interpretation as a reasonable interpretation of the regulation. The Veteran then petitioned for a panel decision, and at that stage the Secretary changed the position and said 459 should apply to non-arthritis claims as well. And at that point, as you correctly pointed out, the Veterans Court then said that is also a reasonable interpretation of this regulation, which admittedly is quite ambiguous. We will adopt this new interpretation going forward. So to answer your first question, if I may, about the significance, the way Burton was decided is not particularly significant to how Section 459 will be applied going forward. But for acute purposes, where what we have to do is put ourselves in the shoes of the original VA adjudicator and understand the law that existed at the time of that original adjudication, I think it's hugely significant that the Veterans Court never said in Burton that the regulation, Section 459, plainly means it goes outside the arthritis context. I think it's very significant that the Veterans Court simply deferred to the Secretary's reasonable interpretation of the regulation. That shows us that it's not the kind of interpretation that can give rise to Q. Okay. So you, based on your opening statement, I want to make sure I understand the government's view. In Persevalley, Persevalley 2, the Federal Circuit panel decision, this court said there can be error for purposes of Q just based on the language of the regulation itself. So I take it that you would agree that what that means is there can be RO applications of a regulation that are just facially erroneous, that are just undebatably clear that the RO had a misunderstanding of the regulation. Yes, there can be. And that would satisfy the Q standard? In some circumstances, certainly. And as we pointed out, if you have a situation in which what you're dealing with is a regulation that had never been interpreted before and the RO adjudicator is going into it blind, essentially interpreting this regulation for the very first time, and that interpretation is plainly, unambiguously, clearly and unambiguously inconsistent with the text of the regulation, then yes, you certainly can have Q. What if hypothetically, in Burton, the Veterans Court didn't, in a presidential opinion, didn't just simply defer to the Secretary's new understanding of 4.59, but instead the Veterans Court elected to undertake a definitive interpretation and used all available interpretive tools and then concluded, after that searching inquiry, the regulation is unambiguous. It includes non-arthritis claims. And so therefore, it is clear. Would such a holding inform us that, well, okay, now we have an adjudication that this provision is clear. And so therefore, it's clear and unmistakable error for anyone, at any time, to have had a contrary conception of the regulation. I guess I'm trying to understand what do we mean by Q and if something is deemed to be unambiguous, then it was always unambiguous. It was always clear. And so why wouldn't it be clear and unmistakable error in that context? Right. So that's a very different case, Judge Chen, but I would say that even under that hypothetical scenario, Mr. Seiple still would not be able to show Q. And I say that for two reasons. The first one is when we have to look whether the error was based on the law and the facts that existed at the time of the original adjudication. We're not only looking at the text of the regulation. We're looking at the entire legal landscape surrounding that regulation. Okay. So let's assume, again, in 2004, there was no settled meaning. There was no authoritative interpretation. Okay. So in other words, the lawyer was left to, you know, his own view of trying to apply the regulation the best he can. So in other words, under this hypothetical, the Ferguson and Lichtenfeld cases that we point to also don't exist. Okay. So under that scenario, my answer would be that the court would still have to determine whether the error was undebatable based on the text of the regulation itself, which is a higher bar. Right? If Burton were to decide the way you just described, it would be a decision that the RO committed error in 2004. But Q is not garden variety error. Q has to be undebatable error. The question then becomes, as this court has explained the standard in both George and then before that in Will TVP, is it so clear-cut, this error, that no reasonable adjudicator could have reached the conclusion that the adjudicator here reached? That's what undebatable error means. Right. And what I'm trying to explore with you right now is what's the delta between what I call the Chevron Step 1 inquiry of ambiguity, non-ambiguity, and this other Q inquiry for the interpretive exercise that an RO adjudicator had to undertake in 2004. And I take it that you think it's the RO was burdened with a level of inquiry that's something less than the exhaustive Chevron Step 1 inquiry. But exactly what is it that the RO adjudicator had to undertake in order to satisfy this reasonable mind, no reasonable mind could have understood the regulation? So I would say if you have a regulation that can be interpreted in multiple ways, and let's put 4.59 to the side for a moment, which I think is pretty clearly ambiguous. I think even my friend on the other side said as much. Could be interpreted in multiple ways. And this is where I start thinking again about Chevron and my hypothetical that Burton, the veterans court said it can't be interpreted in multiple ways because I've just undertook the interpretive exercise to conclude that it's clear and unambiguous and can only be understood in one way. So I think it would also depend on what this hypothetical burden opinion would hold. There's one way it can hold, and it can say this language is so clear cut that it can only mean one thing. But it can also say this language has some ambiguities. We've used our tools of statutory and regulatory interpretation, and we've decided that this is the best way to interpret it. I think the former may be subject to Q, but the latter may not be. Because if there's multiple possible interpretations and the secretary chose one, or it wouldn't be the secretary in this case, it would be the VA RO adjudicator, chose one versus the other, sure, a subsequent case held that a different interpretation was the correct one. But if there are ambiguities and if a reasonable adjudicator could possibly have reached the conclusion that the adjudicator in this case reached, then it's not the kind of undebatable error that would be subject to Q. So it's, I don't know what to call it, but some abbreviated form of the Chevron analysis? Sort of quick cut first take analysis and then see if the regulation hits you over the head with one understanding versus another? Sort of. I would say that the question whether the regulation is ambiguous is an important one for Q, but it's only the beginning of the analysis. Because if the regulation is unambiguous, then I think you're more likely to prove Q as a claimant coming in after. But you're not conceding that it would be Q? Well, not necessarily. Okay, using the Chevron sense of understanding. That's right. You do have other Q requirements. For instance, it has to be outcome determinative, which is not something we've discussed at all. But if you do have an ambiguous regulation, I think as long as the RO adjudicator's position was a reasonable one within that realm of ambiguity, I don't think Q can be established because it's simply not the kind of undebatable error that can give rise to Q. With that, we ask for the Court to affirm the Veterans Court's decision. Thank you. Okay. Let's give Mr. DeHoff his two minutes. Thank you, Your Honor. I appreciate that. I want to start by addressing your hypothetical, Judge Chin, in discussing how to interpret a regulation. When we're looking at an ambiguous or a tough-to-interpret regulation, that's the Court's job. That's what Loper Bright said. That's what Kaiser said. And I think that ambiguity is kind of a red herring because whether it's ambiguous or not, under Kaiser and that analysis, and particularly now with Loper Bright and statutes, there is no more ambiguity. It's just what is the best meaning. And so a ruling that a regulation, which would also extend to statutes, that is a little unclear cannot be Q really bumps up against the recent decision in Loper Bright, where the ambiguity is now no longer a thing for statutes. I also want to just pull back a little bit on my concession that this regulation is ambiguous because with Kaiser, that has changed the analysis. And I think that when we look at it through the lens and through the rules of Kaiser, then it's not entirely clear that there is ambiguity here. And I think that it's more of a plain meaning of the regulation, which they didn't have the benefit of at that time. So are you suggesting that the plain meaning of this regulation is that it applies not only to arthritis but outside the arthritis context as well? Yes, Your Honor. That's my position. And for a lot of the reasons that Burton established them. But again, Burton, the case, as opposed to Burton, the Secretary's decision, was an issue of deference. Nothing in Burton, nothing since Burton to my knowledge, has said to the extent that we ever suggested that this regulation applied only to arthritis, how could we have done it? We were clearly wrong. I mean, that's not your position, is it? I'm not sure I understand what you mean. Well, in other words, I'm trying to probe your suggestion that this regulation is not and never was ambiguous. It applied across the board, notwithstanding the use of the language in the first sentence of the regulation referring to arthritis. That's my position, yes, Your Honor. And I think that if you look at it through the rules and the analysis of Kaiser, that we would establish, the courts would establish that that is the best meaning of it, also incorporating some of the guidance given in Loper-Bright. But we have to remember, too, that Burton did not overrule anything that the VA had established. And it wasn't until they showed up to court, and as the Secretary just conceded up here, that it was not until they showed up to court at Burton's appeal that they established the first wrong interpretation and now the correct interpretation. And he also conceded there was no evidence of any interpretation up until that point. And so thank you for this. We just ask that the court find that the Veterans Court misapplied the rule of law with respect to cue and reverse. Thank you. Thank you very much. The case is submitted.